ROSA LYDIA ARMÁIZ, as mother with patria potestas over her minor daughter, LILIANA ARMÁIZ, Plaintiff and Appellee, v. SEVERO SANTAMARÍA OTERO, Defendant and Appellant.

No. 10945. Argued November 2, 1953.—Decided December 30, 1953.

E. Ramos Antonini and Álvaro Ortiz for appellant. José R. Fournier for appellee.

PER CURIAM: In an action of filiation based on concubinage and possession of status, the Superior Court, Bayamón Part, announced the following

"Findings of Fact and Conclusions of Law and Judgment:

"This is a special filiation case for the purpose of bearing the surname, on the authority of Act No. 243, approved May 12, 1945 (Sess. Laws, p. 814):

"This court already held in 1945, in case R–1517, for support, that the minor Liliana Armáiz was the daughter of Severo

Santamaría Otero, with the right to support. This judgment rendered in case R–1517 was affirmed by our Supreme Court.

"The court is of the opinion that the judgment rendered in case R–1517, claiming support, has established the status and adjudged that Liliana Armáiz is the daughter of Severo Santamaría Otero.

"The court is further of the opinion that, according to Act No. 243 of 1945, it is only necessary to prove that minor Liliana Armáiz is defendant's daughter in order that, by that fact alone, it may be adjudged that she has the right to bear the father's surname.

"Defendant's contention is that it is not enough for the courts to have declared that the minor is defendant's daughter, since that ruling was only for the purpose of support, and it should now be proven again that she is defendant's daughter for the purpose of bearing his surname. According to Act No. 243 of 1945, even though the daughter is begotten in adultery, she should be considered as a natural daughter for the purpose of bearing the surname. The court has already ruled that she is defendant's daughter and, whether or not she is the offspring of the father's adultery, the Act gives her at least the right to carry the surname of the latter, who now questions this as he did previously in the action for support.

"And it being an uncontrovertible fact that Severo Santamaría Otero is the minor's father, that it was so adjudged by this Court in the judgment referred to above, Liliana Armáiz, for the purposes of the filiation suit at bar, continues to be Severo Santamaría Otero's daughter and is entitled as such, under the law, to bear Severo Santamaría Otero's surname.

"Wherefore, it is ordered that a marginal note be made in the Vital Statistics Register stating that the minor Liliana Armáiz shall bear her father's surname, which is Santamaría.

"Defendant shall pay the costs, plus $150 for attorney's fees."

In his appeal, defendant assigns five errors to the trial court. The third and fourth errors are to the effect that the court erred "in holding that it is sufficient to prove the paternity of Liliana Armáiz in order that she may have the right to bear Severo Santamaría's surname," and "in rendering a judgment for plaintiff and against defendant which is not supported by the evidence."

 Plaintiff's sole purpose in the action of filiation instituted in the instant case was to bear her father's surname, pursuant to Act No. 229 of 1942 (Sess. Laws, p. 1296), as amended by Act No. 243 of 1945.[1]

The only evidence offered by plaintiff and admitted by the court, with defendant's acquiescence, was the record of the action for support instituted previously by her against the same defendant in the former District Court of Bayamón. In that action the court rendered judgment declaring the plaintiff to be defendant's daughter and ordering him to pay her the sum of $10 a week for her support. The judgment thus rendered was affirmed by this Court on appeal in a per curiam decision of March 13, 1946.

The errors assigned were committed. An action for support merely determines the paternity of claimant, his needs and the capacity of defendant to meet them, a reasonable sum being fixed for the latter purpose. In an action of filiation, on the contrary, it is not sufficient to determine those particulars only—among which is paternity—but it is necessary to establish also any of the requirements provided by § 125 of the Civil Code.[2] In *Vargas* v. *Jusino*, 71 P.R.R.

---

[1] Section 2 of Act No. 229 of 1942, as amended by Act No. 243 of 1945, provides:

"Children born out of wedlock prior to the date this Act takes effect, and who lack the qualifications of natural children according to previous legislation, may be recognized for all legal purposes by the voluntary action of their parents, and in their default, by that of the persons having the right to inherit therefrom. These children will be legitimized by the subsequent marriage of the parents, to each other.

"In case the children referred to in this Section are not recognized by the voluntary action of their parents, and in default of the latter, by that of the persons having the right to inherit therefrom, said children shall be considered as natural children for the sole purpose of bearing the surname of their parents. The action for this recognition shall be prosecuted in accordance with the procedure fixed by the Civil Code of Puerto Rico for the recognition of natural children; *It being understood, however*, That such a recognition shall only have the scope herein expressed."

[2] Section 125 of the Civil Code, 1930 ed., reads as follows:

"Natural children are those born out of wedlock, from parents who,

362, which was also instituted under the authority of Act No. 229 of 1942, as amended in 1945, and in which the presumptive father was also married we stated at page 366:

"Said Act only operates prospectively and the acknowledgment authorized under· it, whether voluntary or involuntary, should conform to the provisions of § 125, *supra*. *Elicier* v. *Heirs of Cautiño*, 70 P.R.R. 407; *Correa* v. *Heirs of Pizá*, 64 P.R.R. 938. *The lawmaker failed to make any distinction between the evidence required in ordinary actions of filiation and in actions of filiation brought by the child for the sole purpose of bearing the surname of his father. Since no distinction was made, we must assume that his intention was that in both kinds of actions the evidence should be the same. . . ."* (Italics ours.)

As far as the filiation was concerned, the evidence offered established the paternity alone but not the concubinage or the possession of status alleged in the complaint. On that evidence alone, the action of filiation should not have prospered.

The judgment appealed from is reversed and the petition dismissed.

Mr. Justice Ortiz did not participate herein.

---

Mr. Justice Negrón Fernández, with whom Mr. Justice Belaval concurs, dissenting.

The rule sanctioned in *Vargas* v. *Jusino*, 71 P.R.R. 362, depriving a child born under Act. No. 229 of May 12, 1942

---

at the moment when such children were conceived or were born, could have intermarried with or without dispensation.

"The natural child may be recognized by the father and mother conjointly or by one of them only either in the record of birth or in the testament or in any other public instrument.

*"The father is obliged to recognize the natural child:*

"1. When there exists an indubitable statement in writing of the father wherein he expressly acknowledges his paternity.

"2. Where the child has uninterruptedly enjoyed the condition as of a natural child of the defendant father justified by acts of the same father or of his family.

"3. When the mother was known to have lived in concubinage with

(Sess. Laws, p. 1296), as amended by Act No. 243 of May 12, 1945 (Sess. Laws, p. 814), of the right to bear its father's surname, notwithstanding the fact that the paternity was fully established thus creating legal obligations in the father, should prevail no longer in our jurisprudence.

That same rule once more deprives another child, whose paternity has been established and whose father has been adjudged as such, of its right to bear a name.

Yesterday it was Claribel Vargas—in all fairness Claribel Jusino—who sacrificed her right to bear the paternal surname because all she could prove was who her father was. Today it is Liliana Armáiz—in all fairness Liliana Santamaría—who sacrifices the least right recognized to her by our positive legislation, because the only evidence she was able to offer was a previous judicial declaration of paternity. As if paternity, as a juridical truth, could be re-litigated after having been judicially sanctioned. As if paternity were not a single unit which, after being adjudicated, would not create, as a consequence inherent in its own existence, the right to a name, which is the first distinction of dignity conferred on every human being.

Commenting on the "prohibitive silence" of the Spanish Civil Code on the right of adulterine and incestuous children to bear the father's surname—a legal right whose purpose of social justice has been changed by Act No. 229—Scaevola states as follows:

---

the father, both during her pregnancy and at the time of the birth of the child.

"4. When the child may present any authentic evidence of his paternity.

"The mother shall likewise be obliged to recognize a natural child in the same cases as the father, and further where the act of the confinement and the identity of the child are fully established.

"The child, if of age, cannot be recognized without his consent.

"When the recognition of the minor is not made at the time of recording the birth or in the testament, the approval of the judge of the district court of the district where the child resides, with the concurrence of the fiscal, shall be necessary."

"The Code is silent on one of the rights which it grants other children, such as the right to bear the surname of the father or mother making the acknowledgment. Will the illegitimate child, who is not natural, have such a right when he receives support, upon meeting any of the circumstances enumerated in § 140? Section 139 provides that the legitimate, legitimized and natural children shall be entitled only to support, omitting the case under consideration here, expressly mentioned in the Code, the inference being, therefore, that the fundamental civil law grants them no such right. However, every individual must, from the instant of his birth, carry a surname . . . We can in no wise agree with the prohibitive silence of the Code, springing from the use of the adverb *only*. Parenthood bears, and has always borne, as an inherent consequence, that the children shall use their parents' surname. This is evidenced by the fact that the substantive law in force has not contained heretofore any express provision on the matter. It would therefore be desirable if the authorities should interpret the silence of the law to mean that a child may bear the paternal or maternal surname, in order to achieve harmony with the principles of justice. Once the parenthood, that is, the cause, is legally established, it is necessary to admit the effect, the filiation, and this is accredited in society by the use of the surname." 3 Scaevola, *Código Civil*, 5th ed., 437–438.

Justice, in the purest concept of its mission, has a social function to accomplish and a human objective to achieve. The restrictive interpretation of Act No. 229, which is repugnant to the purpose of social justice which inspired it, and which negatives a right which stems from a legally verified filial relation, does not accomplish that function or achieve that objective. Under that legislation, there will be no more children without name—true outcasts in our community— whenever they have fathers adjudged as such by the State, who are bound to comply with the specific obligations arising from that status. Paternity has no stages, nor classes, nor degrees. Act No. 229 does not require, can not require, proof other than paternity. *Vargas* v. *Jusino, supra*, dis. op., p. 369, *Figueroa* v. *Díaz, ante*, p. 152, the writer's opinion. I therefore dissent.